# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RENEE K., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRANK BISIGNANO, ) <br> COMMISSIONER ) <br> OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | Case No. CIV-25-180-SM |

## MEMORANDUM OPINION AND ORDER

Renee K.[1] (Plaintiff), seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to proceed before the undersigned for disposition. Docs. 9, 10; *see* 28 U.S.C. § 636(c).[2]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing that the Administrative Law Judge (ALJ) (1) failed to apply Social Security Ruling (SSR) 96-8p[3] in his

---

[1] The Court refers to Plaintiff by first name and last initial only to protect Plaintiff's privacy because of the sensitive nature of medical and personal information disclosed in Social Security cases.

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

[3] 1996 WL 374184, at *5 (July 2, 1996).

consideration of testimony from Joseph Yang, D.O., and (2) improperly considered Plaintiff's subjective symptoms. Doc. 8, at 12-26.

After careful review of the AR, the parties' briefs, and the relevant authority, the Court reverses the Commissioner's decision and remands the case for further proceedings. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff

makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform" a different type of work and that such a "specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

### C.  Relevant findings.

#### 1.  The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 12-23; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step framework). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since June 30, 2022, the alleged onset date;

(2) has the severe medically determinable impairments of obesity, chronic pain, osteoarthritis, and inflammatory arthritis;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[4] (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff can frequently climb, balance, stoop, kneel, crouch, or crawl;

---

[4] "[R]esidual functional capacity is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

    (5)    can perform her past relevant work as a quality assurance worker, a phlebotomist, a customer service representative, and a drug screener; and so, she

    (6)    had not been under a disability from June 30, 2022, through June 20, 2024.

AR 12-23.

### 2. The Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, "making the ALJ's decision the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011); *see* 20 C.F.R. § 404.981.

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax*, 489 F.3d at 1084

(defining substantial evidence as "more than a scintilla, but less than a preponderance"); *Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'" (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005))). The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett,* 395 F.3d at 1172). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v.*

5

*Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

### B.     The ALJ's consideration of Dr. Yang's opinion.

The ALJ found:

> On October 7, 2022, the claimant's treating physician Dr. Joseph Yang completed a medical source statement about the claimant's functional limitations. He reported having treated the claimant since September of 2021. He diagnosed her with inflammatory arthritis and osteoarthritis of the hands, which was worsening. She experienced pain in the bilateral hands, bilateral wrists, and left shoulder. The pain was worse with use, worse in the mornings, and worse with typing on a computer. She had a positive ANA test on June 1, 2022. She did not require any assistive device for walking. She could sit, stand, or walk for 6 to 8 hours in an 8 hour day, but she required the ability to change positions at will. She could rarely lift 10 pounds, and she could occasionally lift less than 10 pounds. She could occasionally twist or stoop, and she could rarely crouch, squat, or climb stairs. She could use her hands or fingers for grasping, turning, or fine manipulation for no more than 5% of the workday, and she could reach for up to 1/3 of an 8-hour day. She also carried diagnoses of depression and anxiety. Her pain was constantly severe enough to interfere with her ability to concentrate. She could not tolerate even low stress at work. Her hand pain was not under control, and her depression and anxiety affected her ability to tolerate stress as well. She would likely miss more than 4 days of work per month due to her impairments. Her limitations had been at this level of severity since May of 2022 (Ex. 3F). *This opinion is partially supported by Dr. Yang's treatment records, which contain subjective reports of significant pain, and some swelling and warmth in the hands; however, said opinion is not supported by the objective imaging studies, which show only mild arthritis in both of the claimant's hands. It is not consistent with the diagnosis from the Arthritis Clinic of mild inflammatory arthritis, nor is it consistent with her good response to prednisone. It is not consistent with her ability to perform a wide range of activities of daily living, albeit at a slow pace.* This opinion is not persuasive.

AR 20-21 (emphasis added).

### 1. An ALJ's consideration of opinion evidence.

In formulating a claimant's RFC, an ALJ may, "and indeed [is] required, to rely on all of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071-72 (10th Cir. 2013) (citing SSR 96-8p). The record evidence an ALJ must rely on includes a claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and effects of symptoms. SSR 96-8p, at *5.

An ALJ considers prior administrative medical findings using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors. *Id.* § 404.1520c(a).

> Supportability examines how closely a medical opinion tracks the evidence and the medical source's explanations: The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be. Consistency, on the other hand, compares a medical opinion to the other evidence: The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.

*Zhu v. Comm'r*, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (quoting 20 C.F.R. § 404.1520c(c)(2)).

The ALJ must articulate how persuasive he finds a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(b). In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2).

### 2. The ALJ's consideration of the supportability and consistency factors.

Plaintiff maintains the ALJ failed to discuss the supportability factor and provided an inadequate consistency analysis in his consideration of Dr. Yang's opinion. Doc. 8, at 12-19. As for supportability, she argues that the ALJ relied on the medical evidence from *other* medical resources, not from Dr. Yang's own evidence and supporting explanations. *Id.* at 14. She refers to Dr. Yang's consideration of the September 2022 x-ray report that he ordered but that other medical sources conducted and interpreted. *See id.* (quoting AR 21). But as the Commissioner points out, this record was part of Dr. Yang's review and contains his electronic signature as "Author." Doc. 14, at 7; AR 396-97. And the x-ray showed mild osteoarthritis on the right wrist and a normal examination on the left wrist. AR 396.

Plaintiff also argues the ALJ's supportability analysis glossed over Dr. Yang's overview of the symptoms she suffers from, and her worsening pain. Doc. 8, at 14-15.

As to consistency, Plaintiff questions the ALJ's reasoning that her diagnoses of "mild arthritis" and "mild inflammatory arthritis" were not consistent with Dr. Yang's opinion. *Id.* at 15. She alleges that no such diagnosis appears in the record. *Id.*

The ALJ attributed a diagnosis of mild inflammatory arthritis originating with the "Arthritis Clinic." AR 21. Dr. Annemarie Whiddon with the Denver Arthritis Clinic provided an assessment that Plaintiff's "positive ANA and joint pain [was] most likely due to mild inflammatory arthritis." *Id.* at 386. But the assessment also posited early rheumatoid arthritis or inflammatory osteoarthritis. *Id.*

As to the ALJ's statement that Plaintiff showed a "good response to prednisone," *id.* at 21, Plaintiff argues that each dose of prednisone was short term, and that she still presented in "constant pain and swelling." Doc. 8, at 17-18. She received a limited fifteen-day taper in August 2022 and another fifteen-day taper in March 2023. *Id.* at 17.  Plaintiff points out there is no evidence of what took place during the fifteen days. *Id.* And then in June 2023, she reported generally the same symptoms, despite her current hydroxychloroquine treatment. *Id.* at 17-18.

In her December 2023 visit to the Oklahoma Arthritis Center, she reported "worse" pain, and questioned why her hydroxychloroquine dosage was

9

reduced, given her worsening symptoms. AR 598. Her treatment provider, PA-C Chad Schroeder discussed increasing her hydroxychloroquine and her methotrexate. *Id.* at 602-03.

While the ALJ recognized Plaintiff reported feeling worse, he attributed that to her postulation that the holiday season exacerbated her symptoms. *Id.* at 19, 598. And he did not mention Plaintiff's other prescriptions and their increased dosages or that she was no longer on prednisone at that time.

The ALJ also relied on Plaintiff's "wide-rang[ing]" activities of daily living. *Id.* at 21. Plaintiff complains the ALJ did not specify which activities might show inconsistency in Dr. Yang's opinion, Doc. 8, at 18, but the ALJ outlined them earlier in his decision, where he discounted Plaintiff's consistency. AR 17-18.

The Court concludes that the ALJ's consideration of Dr. Yang's report is internally inconsistent. This inconsistency undermines the ALJ's analysis of Dr. Yang's opinion and renders the ALJ's decision lacking in substantial evidence.

The ALJ stated the Arthritis Clinic provided a diagnosis of "mild arthritis," which was a mischaracterization of the record. The Commissioner argues that the ALJ's conclusion was a "reasonable" one "to draw." Doc. 14, at 9. But any such conclusion merely provides a post-hoc rationale the ALJ did

10

not make. And the Court cannot "adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

And the ALJ's findings about Plaintiff's improved progress on prednisone lack support in the record. The Court cannot follow the ALJ's reasoning and cannot conclude the RFC is supported by substantial evidence. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

The Court concludes that because the ALJ's analysis was flawed and inconsistent, remand is necessary.

The Court declines to address Plaintiff's other argument on appeal, as it "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## III. Conclusion.

Based on the above, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

**ENTERED** this 1st day of August, 2025.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE